In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3774

CARMEN FRANKLIN and JENIFER CHISM,
on behalf of themselves and all
others similarly situated,

*Plaintiffs-Appellants*,

*v.*

PARKING REVENUE RECOVERY
SERVICES, INC., and
BRYON BELLERUD II, P.C.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 02578 — **Edmond E. Chang**, *Judge*

ARGUED SEPTEMBER 10, 2015 — DECIDED AUGUST 10, 2016

Before FLAUM, RIPPLE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Carmen Franklin and Jenifer Chism parked their cars in a Chicago-area lot owned by Metra, the public commuter railroad, and operated by CPS Chicago Parking, LLC. ("CPS"). The lot offers parking spaces to the

public at the rate of $1.50 per day. CPS says the two failed to pay and sent them violation notices demanding payment of the $1.50 fee and a $45 nonpayment penalty. When they still did not pay, CPS referred the matter for collection to Parking Revenue Recovery Services, Inc. ("Parking Revenue"), which sent them collection letters for the $46.50 total due.

Franklin and Chism responded with this class action against Parking Revenue alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* The district court entered summary judgment for Parking Revenue, holding that the FDCPA does not apply because the unpaid parking obligations are not "debts" as that term is defined in § 1692a(5).

We reverse. The obligations at issue here—unpaid parking fees and nonpayment penalties—are "debts" within the meaning of the FDCPA. That statutory term comprises obligations "arising out of" consumer "transactions." Parking in a lot that is open to all customers subject to stated charges is a "transaction." The obligation that arises from that transaction is a "debt," and an attempt to collect it must comply with the FDCPA.[1]

---

[1] We solicited the views of the Federal Trade Commission on this issue. The FTC has an interest in protecting consumers from abusive debt-collection practices. The FTC accepted our invitation and filed a brief as amicus curiae joined by the Consumer Financial Protection Bureau, which shares the FTC's interest in protecting consumers and is authorized to enforce the FDCPA. 15 U.S.C. § 1692*l*(b)(6). In the view of these federal agencies charged with enforcing the statute, the obligations at issue here are indeed debts covered by the FDCPA. The agencies take no position on the ultimate merits. We appreciate their willingness to assist the court.

## I. Background

In June 2012 Franklin and Chism parked their cars in a Chicago-area lot owned by Metra (the Commuter Rail Division of the Regional Transportation Authority) and operated by CPS, a wholly owned subsidiary of Central Parking System, Inc. CPS is a private company that contracts with Metra to manage parking lots adjacent to commuter rail stations throughout the Chicago area. Under its contract with Metra, CPS keeps a percentage of the gross revenues collected from the lots that it operates. The signage and the pay machine at the lot plainly state that it costs $1.50 for daily parking. And CPS tells us that the signage also states that a fee of up to $60 will be assessed to parkers who fail to pay.

Franklin and Chism both insist that they paid the $1.50 upon parking, but CPS claims they parked without paying and now owe the $1.50 parking fee and a $45 nonpayment penalty. CPS referred the matter to Parking Revenue, which in turn sent the women collection letters. The letters noted that Franklin and Chism had previously received one or more parking-violation notices and demanded payment of "this debt" within 30 days or alternatively, notification in writing that they dispute the debt's validity.

Franklin and Chism responded with this class action against Parking Revenue alleging that the collection letters violated the FDCPA in numerous ways. The suit alleges that parking in the lot was a "transaction"—Central Parking offers parking to all comers, which the plaintiffs accepted by parking in the lot—and the payment obligation therefore was a *debt*, the collection of which is governed by FDCPA.

The district judge disagreed. He characterized the collection letters as attempts to collect *fines* imposed for violating the parking lot's rules. The judge said that the payment obligation was "materially indistinguishable from a ticket issued for failure to feed a parking meter." As such, it did not reflect a consensual transaction; Franklin and Chism essentially *stole* the parking spaces from CPS. On this reasoning, the judge concluded that the obligations were not debts within the meaning of the FDCPA and granted Parking Revenue's motion for summary judgment.[2]

## II. Discussion

We review the court's order granting summary judgment de novo, evaluating the record in the light most favorable to Franklin and Chism and drawing all reasonable inferences from the evidence in their favor. *Townsend v. Cooper*, 759 F.3d 678, 685 (7th Cir. 2014).

The FDCPA prohibits various "abusive debt collection practices," 15 U.S.C. § 1692(e), including the use of false or misleading representations, *id.* § 1692e, and other unfair practices, *id.* § 1692f, to collect any debt. Franklin and Chism contend that Parking Revenue's collection letters violate the FDCPA in several ways.[3] Our present concern, however, is

---

[2] The suit also named Bryon Bellerud II, an attorney for Parking Revenue responsible for sending the collection letters. The judge entered an order of default against Bellerud because he failed to answer or otherwise plead. As we've just explained, however, the judge later concluded that the FDCPA is inapplicable.

[3] Franklin and Chism allege that the letters (1) falsely represented that in order to avoid a presumption of the debt's validity, they must dispute the charges and fees in writing; (2) attempted to collect the additional $45 charge without express authorization to impose the charge; and (3) made

limited to the threshold question whether the FDCPA even applies. That question turns on whether the underlying payment obligations are debts within the meaning of § 1692a(5). If they are, then the FDCPA applies and summary judgment was improper.

Section 1692a(5) defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

Two parts of the definition need further explanation. First, although the statute does not define "transaction," we have held that the term is "a broad reference to many different types of business dealings between parties." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997). Next, the "arising out of" language limits the FDCPA's reach to only those obligations that are created by the *contracts* the parties used to give legal force to their transaction. *Id.* at 1326. This means that, in general, efforts to collect on obligations that are created by other kinds of legal authorities, like tort law or traffic regulations, are not covered by the FDCPA.

The parties rightly agree that if Franklin's and Chism's obligations arise out of contract law, they are debts covered by the FDCPA. And it's clear that contract law *is* the source of the obligations at issue here. Indeed, at oral argument Parking Revenue's attorney was unable to explain what

---

false, deceptive, or misleading representations. The judge didn't reach the merits of these arguments because he concluded that the FDCPA was inapplicable.

source of law *other than* contract could have created the obligations that its letters attempted to collect. By parking in the lot, Franklin and Chism accepted CPS's offer to park at the stated cost. At that moment a contract was formed obligating them to pay the stated price or pay a higher price if they left the parking lot without paying.

It matters not that Metra owns the lot, or that the contract between Metra and CPS sometimes refers to the $45 non-payment charge as a "fine." The crucial question is the legal source of the obligation. Although Metra is a governmental agency, no municipal ordinance or regulation obligates park-and-dashers to pay the $45; that obligation comes from the contract that is formed when a customer parks in the lot. Metra owns these lots like any other parking-lot proprietor and contracts with CPS to operate them. That contract provides that any dispute between "patron[s]" (parkers) and "[o]perator" (CPS) shall be handled "as a matter of contract." So the district judge's analogy to fines assessed for nonpayment at municipal parking meters was inapt. These obligations have no source in municipal law.

The judge's analogy to theft was also inapt. The judge thought a car parker's failure to pay resembled the condition of the thief that we described in *Bass*. There we noted that the FDCPA doesn't cover a thief's obligation to pay for the goods he steals if his obligation is created by *tort law* (e.g., the tort of conversion), *see* Restatement (Second) of Torts § 222A (Am. Law Inst. 1965), rather than by *contract law*, *see Bass*, 111 F.3d at 1326. The obligations at issue here, however, are *not* premised on the tort of conversion; they are premised exclusively on the contract that was formed between Franklin and Chism on one side and CPS on the other.

This distinction between contract and tort is the reason that the obligation incurred after paying with a bad check gives rise to a "debt" under the FDCPA while shoplifting does not. *See id.* at 1325. When the check is tendered for payment, a contract is formed. *See id.*

To conclude: The signs at the parking lot offered a parking spot to all comers for $1.50 per day and noted a penalty for failing to pay. Franklin and Chism each accepted this offer—and thus formed a contract—when they parked in the lot. Their obligation to pay the $46.50 is premised entirely on this contract. Parking Revenue was therefore attempting to collect debts, and its attempts are regulated by the FDCPA's protections.

REVERSED.